[S. F. No. 8452. In Bank.—January 30, 1922.]

EDWIN SCHWAB, Appellant, v. FRIEND W. RICHARDSON, as Treasurer, etc., Respondent.

[1] TAXATION—INTANGIBLE PROPERTY OF DOMESTIC CORPORATION—INTERSTATE AND FOREIGN BUSINESS.—The state has the authority to tax the intangible property of a domestic corporation within the state regardless of the fact that such property derives its value from interstate and foreign commerce.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, O. K. McMurray and Herbert W. Clark for Appellant.

U. S. Webb, Attorney-General, Raymond Benjamin and Frank L. Guerena, Deputy Attorneys-General, for Respondent.

WILBUR, J.—This is an action to recover taxes paid under protest by the Oceanic Steamship Company to the

---

1. Taxation of corporate franchise, notes, 131 **Am. St. Rep.** 862; 7 **Ann. Cas.** 518.

state of California. After answer plaintiff moved for a judgment upon the pleadings, which was denied. At the trial plaintiff submitted the case upon the admission in the pleadings, without offering any evidence upon the issues, and judgment was rendered in favor of the defendant. Plaintiff appeals.

The Oceanic Steamship Company is a corporation organized under the laws of the state of California and engaged exclusively in the business of transporting freight and passengers between San Francisco and the Hawaiian Islands and certain foreign countries. The company has maintained offices in San Francisco for the transaction of its interstate and foreign business, but has conducted no other business in this state except the purchase of its fuel and supplies used in its transportation business.

The state board of equalization assessed the franchise of the company, or its "corporate excess" (*Miller & Lux, Incorporated* v. *Richardson*, 182 Cal. 115 [187 Pac. 411]), at eight hundred thousand dollars and apportioned one hundred and twenty thousand dollars, or fifteen per cent thereof, to California as representing, in the judgment of the board of equalization, the proportion of the intangible property of the corporation properly taxable in California. Plaintiff alleged that this value did not exceed five hundred dollars, but the answer denied that allegation and affirmatively alleged the value to be the amount of the assessment, to wit, one hundred and twenty thousand dollars, and the submission of the case by the plaintiff upon the pleadings without evidence was an admission of this affirmative allegation (see *Hale* v. *Gardiner*, 186 Cal. 661 [200 Pac. 598]). It therefore stands admitted that the tax was not excessive, and if the state has jurisdiction to impose the tax, it is a proper exercise of that jurisdiction.

It is contended by appellant that as the state has imposed a property tax upon the tangible property of the corporation within the state, this tax upon the intangible property of the corporation is in effect a tax upon interstate commerce, and, therefore, violative of the interstate commerce clause of the constitution of the United States (U. S. Const., art. I, sec. 8). [1] Inasmuch as the supreme court of the United States has uniformly held that courts look to the substance and effect of such taxa-

tion rather than its form in order to determine whether or not interstate commerce is illegally interfered with (*Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 698 [39 L. Ed. 311, 15 Sup. Ct. Rep. 360, see, also, Rose's U. S. Notes]; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 85, 86 [58 L. Ed. 127, 34 Sup. Ct. Rep. 15]; *Kansas City Ry. Co.* v. *Botkin*, 240 U. S. 227, 233 [60 L. Ed. 617, 36 Sup. Ct. Rep. 361]; *Looney* v. *Crane Co.*, 245 U. S. 178, 189 [62 L. Ed. 230, 38 Sup. Ct. Rep. 85]), it would seem clear that state taxation of corporate intangible property of a domestic corporation located in a state at its actual value would not in fact constitute such interference regardless of the fact that such intangible property derives its value from interstate and foreign commerce (see *Pullman Co.* v. *Richardson*, 185 Cal. 484 [197 Pac. 246], for a discussion of this matter). A different rule prevails as to a foreign corporation when its business in this state is exclusively interstate commerce (*People* v. *Alaska etc. Co.*, 182 Cal. 202 [187 Pac. 742]). If this question was at any time doubtful it has been set at rest by decisions of the United States supreme court since this case was on appeal.

The decision of that court in *Cream of Wheat Co.* v. *County of Grand Forks* (N. D.), 253 U. S. 325 [64 L. Ed. 931, 40 Sup. Ct. Rep. 558], clearly upholds the authority of the state in imposing the tax in the case at bar. There a domestic corporation which had no tangible, real, or personal property within the state of its domicile and no paper evidence of intangible property therein was held taxable in the state of its domicile for its intangible property which we have called the "corporate excess" or "franchise" (*Miller & Lux, Inc.,* v. *Richardson, supra*). In the opinion it is said:

"Its manufacturing, commercial and financial business was conducted wholly without the state; and it had not at any time during any of those years within the state either any tangible property real or personal or any papers by which intangible property is customarily evidenced. Its property, as distinguished from its franchise, is alleged to have been taxed in states other than North Dakota. . . .

"The company was confessedly domiciled in North Dakota; for it was incorporated under the laws of that state.

As said by Mr. Chief Justice Taney, 'It must dwell in the place of its creation, and cannot migrate to another sovereignty.' (*Bank of Augusta* v. *Earle*, 13 Pet. 519, 588 [10 L. Ed. 274, see, also, Rose's U. S. Notes].) The fact that its property and business were entirely in another state did not make it any the less subject to taxation in the state of its domicile. The limitation imposed by the Fourteenth Amendment is merely that a state may not tax a resident for property which has acquired a permanent *situs* beyond its boundaries. . . . The limitation upon the power of taxation does not apply even to tangible personal property without the state of the corporation's domicile if, like a sea-going vessel, the property has no permanent *situs* anywhere. (*Southern Pac. Co.* v. *Kentucky,* 222 U. S. 63, 68 [56 L. Ed. 96, 32 Sup. Ct. Rep. 13].) *Nor has it any application to intangible property* (*Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 205 [4 Ann. Cas. 493, 40 L. Ed. 150, 26 Sup. Ct. Rep. 36]; *Hawley* v. *Malden,* 232 U. S. 1, 11 [Ann. Cas. 1916C, 842, 58 L. Ed. 477, 34 Sup. Ct. Rep. 201]), even though the property is also taxable in another state by virtue of having acquired a 'business *situs*' there (*Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54, 59 [L. R. A. 1918C, 124, 62 L. Ed. 145, 38 Sup. Ct. Rep. 40]). As stated in that case: 'It is unnecessary to consider whether the distinction between a tax measured by certain property and a tax on that property could be invoked in a case like this. (*Flint* v. *Stone-Tracey Co.,* 220 U. S. 107, 146, 162 et seq. [Ann. Cas. 1912B, 1312, 55 L. Ed. 389, 31 Sup. Ct. Rep. 342].) Whichever this tax technically may be, the authorities show that it must be sustained.' " (Italics ours.) (*Cream of Wheat Co.* v. *County of Grand Forks, supra.*)

The power of the state to make this assessment is fully sustained in *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113 [65 L. Ed. 165, 41 Sup. Ct. Rep. 45]. In that case the corporation was taxed two per cent upon its net income claimed by the state to have been earned from business carried on within the state. The amount of this business was required by statute to be ascertained in the following manner: "If the company's net profits are derived principally from ownership, sale, or rental of real

property, or from the sale or use of tangible personal property, the tax is imposed on such proportion of the whole net income as fair cash value of the real and the tangible personal property within the state bears to the fair cash value of all the real and tangible personal property of the company. If the net profits of the company are derived principally from intangible property, the tax is imposed upon such proportion of the whole net income as the gross receipts within the state bear to the total gross receipts of the company." It was thus determined by the state authorities that forty-seven per cent of the net receipts of the company were attributable to business done in Connecticut, although its *net* receipts in Connecticut were only $42,942.18,. as compared with $1,293,643.95 received in other states. It was claimed that the state authorities had violated the interstate provisions of the United States constitution and the fourteenth amendment thereto. Upon the first proposition the supreme court said:

"A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the state. (*Postal Tel. Cable Co.* v. *Adams,* 155 U. S. 688, 695 [39 L. Ed. 311, 15 Sup. Ct. Rep. 360].) This tax is based upon the net profits earned within the state. That a tax measured by net profits is valid, although these profits may have been derived in part, or, indeed, mainly from interstate commerce, is settled. (*United States Glue Co.* v. *Oak Creek,* 247 U. S. 321 [Ann. Cas. 1918E, 748, 62 L. Ed. 1135, 38 Sup. Ct. Rep. 499]; *Shaffer* v. *Carter,* 252 U. S. 37, 57 [64 L. Ed. 445, 40 Sup. Ct. Rep. 221]; *Peck & Co.* v. *Lowe,* 247 U. S. 165 [62 L. Ed. 1049, 38 Sup. Ct. Rep. 432].) Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause."

On the question of the alleged violation of the Fourteenth Amendment by taxing property outside the state, the court in that case said:

"But this showing wholly fails to sustain the objection. The profits of the corporation were largely earned by a series of transactions beginning with manufacturing in Connecticut and ending with sale in other states. In this

it was typical of a large part of the manufacturing business conducted in the state. The legislature, in attempting to put upon this business its fair share of the burden of taxation, was faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders. It, therefore, adopted a method of apportionment which, for all that appears in this record, reached, and was meant to reach, only the profits earned within the state.''

It was also held that the taxpayer had the burden of proving that forty-seven per cent of its profits was not reasonably attributable to the business within the state. (*Underwood Typewriter Co.* v. *Chamberlain, supra.*) This principle would lead to the conclusion in the case at bar that the admission of the plaintiff that fifteen per cent of its intangible property was located within the state was fatal to its recovery, because there is not only no proof of an unreasonable or unjust application of the law to the facts, but, on the contrary, an express admission of its just application.

The fact that the corporation involved is engaged in interstate commerce does not deprive the state of the power to tax the franchise of a domestic corporation even though the privilege of being a corporation derived its value in part from interstate commerce. (*Kansas City etc. Ry. Co.* v. *Botkin,* 240 U. S. 227 [60 L. Ed. 617, 36 Sup. Ct. Rep. 361]; *Pullman Co.* v. *Richardson, supra.*)

The case of *Looney* v. *Crane Co.,* 245 U. S. 178 [62 L. Ed. 230, 38 Sup. Ct. Rep. 85], relied upon by the appellant, is not inconsistent with the conclusion we have reached in this case. It was held in that case that the proportion of the assets of the corporation taxed in Texas was so greatly in excess of the amount which was justly taxable therein or could be justly deemed to be located therein, as to constitute a burden upon interstate commerce. It was held that under the facts there presented the tax was a direct burden upon interstate commerce and was imposed upon property which was wholly beyond the confines of the state and not subject to its jurisdiction and was thus a taking of property without due process of law. No such case is presented here.

From the foregoing decisions it is clear that the state had authority to tax the intangible property of the Oceanic Steamship Company within the state, and that such tax was not a burden upon interstate or foreign commerce prohibited by the federal constitution.

Judgment affirmed.

Sloane, J, Shurtleff, J., Lennon, J., Shaw, C. J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred.