[Civ. No. 31728. First Dist., Div. Three. Nov. 13, 1973.]

HOST INTERNATIONAL, INC., Plaintiff and Appellant, v. COUNTY OF SAN MATEO, Defendant and Respondent.

## COUNSEL

Pillsbury, Madison & Sutro, Noble K. Gregory, Stephen J. Martin and Michael H. Salinsky for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Jerome F. Coleman, Deputy District Attorney, for Defendant and Respondent.

## OPINION

**DRAPER, P. J.**—The issue on this appeal is the propriety of the method used by the San Mateo County assessor in evaluating plaintiff-appellant's possessory interest under its lease of space for operation of the food and beverage concessions in the San Francisco International Airport terminals. In 1969, the assessor valued the possessory interests of airport tenants upon the capitalization of income approach rather than, as formerly, on replacement cost. The result was a substantial increase in the tax levied upon plaintiff's possessory interest. Plaintiff sought adjustment of the assessment. After a full hearing, the assessment appeals board rejected the

request. Plaintiff then brought this action for refund of more than $40,000 in taxes paid under protest for each of the tax years 1969-1970 and 1970-1971 (Rev. & Tax. Code, § 5103). The trial court awarded plaintiff a refund of $3,137.79 as a portion of its 1969-1970 taxes, but entered judgment for respondent county in all other respects. Plaintiff appeals.

The dirt fill used in constructing the airport in San Mateo County is an "improvement" (Const., art. XIII, § 1) and thus not taxable to San Francisco (*City & Co. of S. F.* v. *County of San Mateo* (1950) 36 Cal.2d 196, 198-200 [222 P.2d 860]). San Francisco can be taxed by San Mateo County only for the value of the tide and submerged lands as of the date San Francisco acquired them in the 1930's. But possessory interests are taxable to lessees of the tax exempt owner (Rev. & Tax. Code, § 107). Appellant does not dispute this view, but contends that the method of assessment is erroneous, and its amount excessive. The correct method of appraising such a possessory interest has been set out in detail (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546 [290 P.2d 544). Appellant asserts that *De Luz* guidelines have not been followed here.

Appellant's lease, granted to it as the highest responsible bidder, requires payment of a monthly minimum or a percentage of gross sales, whichever is higher. Appellant first asserts that its rental payments to San Francisco "were far in excess of the income that could have been obtained if the leasehold were sold upon the open market." If so, the *De Luz* rule was violated, since it specifies that the earnings to be capitalized "are not those of the present owner of the property, but those that would be anticipated by a prospective purchaser." (P. 566.) But there is no evidence to support appellant's conclusion. Its own expert conceded that there are no sales of comparable leases. There is no evidence that other competent operators, acceptable to San Francisco as lessees, are unwilling or unavailable to bid for and assume the present lease. Although the present tenant's experience was the only specific guide to value, it is apparent from the testimony that the present tenancy was not looked to for itself alone, but as a guide to market value. ■ As explained in *De Luz,* the absence of an "actual market" does not permit property to escape taxation. ■ In assessing possessory interests upon the capitalization of income method, a "hypothetical market price is its value even though a sale of the property has not been made or contemplated." (45 Cal.2d at p. 563.)

Appellant, as would be expected, asserts that its expertise largely accounts for the amount of its business at the San Francisco Airport. But the evidence at most shows that appellant is a more successful operator than some others conducting like business in some other airports. It does not

even remotely show that all other concessionaires in the like field are less successful or that none would bid for the lease or would operate it as efficiently as appellant. Thus there is no negation of the imputed value at which the assessor arrived, after he deducted reasonable amounts for risk and other possible items which might tend to decrease value.

Appellant also points to substantial differences in rental payment per square foot as establishing that rentals paid by it "were far more than consideration for the right to occupy space." We cannot agree. It is clear that any prospective purchaser of this lease for the food and beverage concession would be (and would be required by the owner to be) one intending to operate a like enterprise. Such a lessee would pay and would be expected to pay more per square foot of space than he would for operation of a shoe shine stand. The highest and best use (as well as, in this case, the only permitted use) of this space is for the furnishing of food and beverages. The same would be true of space in a supermarket or in a group of downtown buildings, and we find no violation of sound appraisal practices in fixing value of the lease as was done here. *De Luz* permits reference to appellant's operation in determining what another lessee would pay for the same space upon like terms. It recognizes also, as a factor in market value of the possessory interest, governmental control of the project and stability of income resulting from location of the project "on a military installation that is 'deemed to be a permanent part of the Military Establishment.' " (45 Cal.2d at p. 572.) We find no violation of *De Luz* in the use here made of actual income.

The trial court found that "the payments under [the] lease represent the fair rental value for the value of the space occupied and contain no element of a franchise or license fee, nor do said payments reflect any enterprise value." If this finding is valid, it disposes of all the foregoing arguments of appellant.

■ Appellant, however, contends that the court applied the substantial evidence rule rather than reweighing the evidence presented to the appeals board and exercising its independent judgment upon the weight of the evidence. We need not determine whether the 1968 amendment (Rev. & Tax. Code, § 1605.5) requires the trial court to apply the independent judgment test, since we conclude that the trial court did in fact apply the standard for which appellant contends. It is quite true that some remarks of the trial judge, during trial and upon appellant's request for additional findings, suggest that he did not weigh the evidence. But the findings of fact and conclusions of law, which constitute the decision, affirmatively state the court's full recognition that, under section 1609.5, it "must review

the record (of the assessment appeals board) to determine whether the findings and conclusions of the Board were supported by the weight of the evidence." Review of all the evidence before the board shows that its weight supports the findings and conclusions of both the board and the trial court. Even more clearly, the substantial evidence test supports the judgment. Appellant has no valid complaint.

■ Appellant asserts error in the trial court's refusal of its request for specific findings. But the requested findings related to methods of evaluation not used by the board or the trial court, or to mere details of evidence as distinguished from ultimate facts. Since we have determined that the appraisal method used was proper as a matter of law, these findings are not material and the court did not err in refusing them. (*Roberts* v. *Graves*, 269 Cal.App.2d 410, 418 [75 Cal.Rptr. 130].)

■ Appellant argues that its assessment is erroneous because the board, after fixing total value of the possessory interest on the capitalization of income method, allocated the total among land (meaning the fill added to the airport's original tide and submerged lands), improvements, i.e., buildings, and personal property. The asserted error is that the fill is thus valued at more than its replacement cost. We cannot agree. Appellant cites no California authority for the asserted rule that the sum of possessory interests cannot exceed replacement cost of the improvements. The argument runs only to the average depth of 10 feet of fill which now lies compressed between the original land and the present buildings thereon. It seems somewhat impractical to consider removing this fill from its present sandwiched position by some sort of vacuuming, and its replacement and recompaction by methods not now discussed or known. The assessment, properly based upon capitalization of income, is not invalidated by an attempt to allot portions of the proper valuation to one or more parts of the whole. In any event, the basis of appellant's argument is demolished by its own expert's testimonial concession that the value of filled land may well exceed the value of the bare land and the cost of filling it.

■ The trial court did, however, err in one respect in computing the 1969-1970 value of the possessory interest. That interest is the excess of the value of the lease on the open market "over the present worth of the rentals under said lease for the unexpired term" (Rev. & Tax. Code, § 107.1). The trial court deducted only those rentals which were to accrue after July 1, 1969, the beginning of the fiscal year for which the tax was levied. But the tax assessment date was March 1, 1969. The period for which the tax was to be used by the county is immaterial. The lessee was

entitled to deduction, on March 1, of the present value of rentals to be paid by it thereafter. Obviously, rentals to be paid from March 1 through June 30 should have been included in the deduction. Thus appellant's tax must be reduced by $10,482.79, rather than the figure of $3,137.79 allowed by the court. We do not consider respondent's arguments that no deduction should be allowed after August 31, 1969 because tenancy after that date was under the renewal option exercised in 1962, and thus outside the application of section 107.1 under the terms of the third paragraph of that section. This issue was not raised below, and respondent has not appealed from the judgment.

The judgment, as it relates to appellant's fifth cause of action, is modified to provide that the award to plaintiff be $10,482.79, rather than $3,137.79. As so modified, the judgment is affirmed. Each party shall bear its own costs on appeal.

Brown (H. C.), J., and Caldecott, J., concurred.