[Civ. Nos. 46836, 46837. First Dist., Div. Four. Jan. 22, 1980.]

ITT WORLD COMMUNICATIONS, INC.,
Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA et al.,
Defendants and Respondents.

[Civ. Nos. 46838, 46839.

ITT WORLD COMMUNICATIONS, INC.,
Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Respondents.

[Civ. Nos. 46840, 46841.

ITT WORLD COMMUNICATIONS, INC.,
Plaintiff and Appellant, v.
COUNTY OF SAN MATEO et al.,
Defendants and Respondents.

[Civ. Nos. 46842, 46843.

ITT WORLD COMMUNICATIONS, INC.,
Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al.,
Defendants and Respondents.

**COUNSEL**

Robert L. Dunn and Bancroft, Avery & McAlister for Plaintiff and Appellant.

George Deukmejian, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Edward P. Hollingshead, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

CHRISTIAN, J.—ITT World Communications, Inc. appeals from summary judgments dismissing complaints by which it sought from respondent counties of San Francisco, San Mateo, Santa Clara and Los Angeles, refunds of property tax for the fiscal years 1975-1976 and 1976-1977. The complaints also sought a determination that respondent State Board of Equalization had not correctly valued appellant's property.

Appellant, a public utility, owns property in the Counties of San Francisco, San Mateo, Santa Clara, and Los Angeles. This property is assessed by the State Board of Equalization. The board has considered

three indicators of value in assessing the property: historical cost less depreciation, reproduction cost new less depreciation (RCNLD), and capitalized earning ability.[1]

In 1969 the board issued a publication entitled "Assessment Practices of the State Board of Equalization Relating to Public Utilities," which stated that the valuation of state-assessed utility property could not exceed its RCNLD: "[R]eproduction cost new less depreciation is not considered to be an important indicator of value for unitary state-assessed property. However, this indicator is regarded as a ceiling for taxable value. The California Constitution exempts franchises from property tax, and it is considered that any value greater than reproduction cost new less depreciation is franchise value."

In 1975 the board rescinded its policy of using RCNLD as a ceiling on taxable value. The board based its action upon advice from its legal and appraisal staffs that the use of RCNLD as an upper limit on value is not required by either California law or appraisal theory.

In the fiscal years 1975-1976 and 1976-1977 the board assessed appellant's property at values in excess of RCNLD. The amount of the board's assessed values roughly approximated the amount of the prop-

---

[1]One or more of five different approaches in estimating value are to be used in the assessment of utility property: "Value Approaches. In estimating value as defined in section 2, the assessor shall consider one or more of the following, as may be appropriate for the property being appraised:

"(a) The price or prices at which the property and comparable properties have recently sold (the comparative sales approach).

"(b) The prices at which fractional interests in the property or comparable properties have recently sold, and the extent to which such prices would have been increased had there been no prior claims on the assets (the stock and debt approach).

"(c) The cost of replacing reproducible property with new property of similar utility, or of reproducing the property at its present site and at present price levels, less the extent to which the value has been reduced by depreciation, including both physical deterioration and obsolescence (the replacement or reproduction cost approach).

"(d) If the income from the property is regulated by law and the regulatory agency uses historical cost or historical cost less depreciation as a rate base, the amount invested in the property or the amount invested less depreciation computed by the method employed by the regulatory agency (the historical cost approach).

"(e) The amount that investors would be willing to pay for the right to receive the income that the property would be expected to yield, with the risks attendant upon its receipt (the income approach)." (Cal. Admin. Code, tit. 18, § 3.)

erty's capitalized earnings ability.[2] Appellant petitioned for reassessment in each year; the board denied the petitions. Appellant paid taxes under written protest and the present litigation ensued. The cases present pure questions of law susceptible to determination on motion for summary judgment. ■ Appellant contends that its property could not lawfully be assessed at a value in excess of RCNLD.

The state board assesses property owned or used by specified public utilities. But the corporate franchises of public utilities, excepting special franchises, are excluded from property taxation, and are subject to direct taxation under the Bank and Corporation Tax Law (Cal. Const., art. XIII, § 19[3]; Rev. & Tax. Code, § 23154; *Roehm v. County of Orange* (1948) 32 Cal.2d 280, 286 [196 P.2d 550]). All other forms of intangible personal property are also exempt from property taxation. (See Cal. Const., art. XIII, § 2; Rev. & Tax. Code, § 212; *Roehm v. County of Orange, supra,* 32 Cal.2d at p. 285; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 125 at pp. 4106-4107.)

Assessors are presently required to assess all property subject to general property taxation at 25 percent of its full value. (Rev. & Tax. Code, § 401.) "Full value" means "fair market value" or "full cash value" (Rev. & Tax. Code, § 110.5), i.e., "the amount of cash or its equivalent which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other and both with knowledge of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions upon those uses and purposes." (Rev. & Tax. Code, § 110.)

■ Assessors generally analyze three factors in determining "full value": market data on sales of similar property, replacement costs, and income from the property. (*Bret Harte Inn, Inc. v. City and County of*

---

[2]RCNLD, capitalized earnings, and the board's assessed values for the two fiscal years were as follows:

|  | RCNLD | Capitalized Earnings | Board Assessed Value |
|---|---|---|---|
| 1975-76 | $7,620,903 | $ 9,863,836 | $ 9,800,000 |
| 1976-77 | 8,530,511 | 10,948,041 | 10,800,000 |

[3]California Constitution, article XIII, section 19: "The Board shall annually assess (1) pipelines, flumes, canals, ditches, and aqueducts lying within 2 or more counties and (2) property, except franchises, owned or used by regulated railway, telegraph, or telephone companies, car companies operating on railways in the State, and companies transmitting or selling gas or electricity. This property shall be subject to taxation to the same extent and in the same manner as other property. . . ."

*San Francisco* (1976) 16 Cal.3d 14, 24 [127 Cal.Rptr. 154, 544 P.2d 1354]; *De Luz Homes, Inc. v. County of San Diego* (1955) 45 Cal.2d 546, 564-565 [290 P.2d 544].) "[S]ince no one of these methods alone can be used to estimate the value of all property, the assessor, subject to requirements of fairness and uniformity, may exercise his discretion in using one or more of them." (*De Luz Homes, Inc. v. County of San Diego, supra,* 45 Cal.2d at p. 564.) ██ In the present case the state board considered the latter two of these factors, and historical cost less depreciation, in assessing appellant's property. But primary reliance seems to have been placed on the capitalization of income indicator.

██ In reviewing an assessment, a challenge to the result reached by an assessor after applying a sound valuation method is to be distinguished from a challenge to the validity of the method itself. If the taxpayer claims that the assessor erroneously applied a valid valuation method, the decision of the state board is equivalent to a trial court determination, and the court may review only the record presented to the board. The court may overturn the state board's decision only when no substantial evidence supports it; the board's actions are then deemed so arbitrary as to constitute a deprivation of property without due process. (*Bret Harte Inn, Inc. v. City and County of San Francisco, supra,* 16 Cal.3d at p. 23.) Before the board, the assessing officers are presumed to have properly performed their duties; the taxpayer has the burden of showing that the assessments were not fair and equitable. The assessor is not required to go forward with any evidence, but may stand on the presumption of correctness of the assessment. (*Campbell Chain Co. v. County of Alameda* (1970) 12 Cal.App.3d 248, 258 [90 Cal.Rptr. 501].) Thus, to prevail at trial, and on appeal, for want of substantial evidence to support the board's decision, the taxpayer must have overcome the presumption of correctness of the assessment by presenting to the board evidence of assessment impropriety.

If the taxpayer challenges in court the validity of the valuation method itself, it must be determined as a question of law whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of standards prescribed by law. (*Bret Harte Inn, Inc. v. City and County of San Francisco, supra,* 16 Cal.3d at p. 23.) ██ Appellant's primary contention, that the method used by the board to assess its property was itself illegal because it did not retain the use of RCNLD as a ceiling on value, invokes the latter scope of review. This court must determine whether the abandonment of RCNLD

as a ceiling by the board was arbitrary, in excess of discretion, or in violation of the standards prescribed by law.

Appellant contends that an assessment in excess of RCNLD is necessarily a tax upon its franchise, which is constitutionally exempt from property taxation. (Cal. Const., art. XIII, § 19.) The board itself, in its 1969 statement of its policy of using RCNLD as a ceiling on value, stated: "The California Constitution exempts franchises from property tax, and it is considered that any value greater than reproduction cost new less depreciation is franchise value." Respondents contend that the 1969 construction, abandoned in 1975, was simply erroneous.

Appellant's reasoning begins with its premise that the value of a company's intangible property may be determined by deducting the value of tangible property from the total value of all its property. (See *Henderson Bridge Company* v. *Kentucky* (1897) 166 U.S. 150, 153 [41 L.Ed. 953, 954, 17 S.Ct. 532]; *Adams Express Company* v. *Ohio* (1897) 166 U.S. 185, 220 [41 L.Ed. 965, 977, 17 S.Ct. 604].) The difference between the value of a corporation's outstanding stocks and bonds and the value of the tangible or physical properties is termed "corporate excess." (*Miller & Lux Inc.* v. *Richardson* (1920) 182 Cal. 115, 117 [187 P. 411].) Prior to 1933, the California Constitution, article XIII, section 14, subdivision (d), provided for property taxation of corporate franchises. During this period courts construed the constitutional use of the word "franchise" as meaning "corporate excess," although this is not the usual meaning of the word. (*Id.*, at p. 127; *People* v. *Ford Motor Co.* (1922) 188 Cal. 8, 10 [204 P. 217]; *Schwab* v. *Richardson* (1922) 188 Cal. 27, 28-29 [204 P. 396], affd. 263 U.S. 88 [68 L.Ed. 183, 44 S.Ct. 60].) When article XIII, section 14, subdivision (d), was amended in 1933 to exempt franchises from property taxation, there was no indication of intent to alter the judicial interpretation of the word "franchise," and there has been no such indication in subsequent constitutional amendments; thus, the term is to be applied in light of its historical interpretation. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849-850 [59 Cal.Rptr. 609, 428 P.2d 593]; see also *People* v. *Vereneseneckockockhoff* (1900) 129 Cal. 497, 500 [58 P. 156, 62 P. 111].)

From these general principles, appellant argues that an assessment in excess of RCNLD necessarily exceeds the value of a corporation's tangible property, and thus impermissibly imposes a tax on corporate excess, or the corporation's franchise. But it has not been established

that an assessment in excess of RCNLD necessarily exceeds the actual value of the property.

▮ While intangible property is exempted from property taxation, such property may enhance the value of taxable tangible property, and this effect may be reflected in the valuation of the tangible property. "Intangible values...that cannot be separately taxed as property may be reflected in the valuation of taxable property. Thus, in determining the value of property, assessing authorities may take into consideration earnings derived therefrom, which may depend upon the possession of intangible rights and privileges that are not themselves regarded as a separate class of taxable property." (*Roehm v. County of Orange, supra,* 32 Cal.2d 280, 285; see also *Michael Todd Co. v. County of Los Angeles* (1962) 57 Cal.2d 684, 693-694 [21 Cal.Rptr. 604, 371 P.2d 340].) This principle was recently reiterated in *Western Title Guaranty Co. v. County of Stanislaus* (1974) 41 Cal.App.3d 733, 741 [116 Cal.Rptr. 351]: "As we learned from *Roehm v. County of Orange, supra,* and *Michael Todd Co. v. County of Los Angeles, supra,* intangible values that cannot be separately taxed as property may be reflected in the valuation of taxable property....[T]he propriety of including nontaxable intangible values in the valuation of otherwise taxable property has been asserted by the courts in a variety of contexts, and market value for assessment purposes is the value of property when put to beneficial or productive use."

▮ Although appellant's franchise cannot be assessed and directly subjected to property taxation, the assessment of its taxable property may take into account earnings from that property that depend upon appellant's possession of a franchise. Such an assessment would properly reflect the effect of the intangible value of possession of the franchise on the value of the tangible, taxable property. If the assessment exceeded RCNLD, this would not necessarily be the result of an unconstitutional assessment of the corporation's franchise unless, as an intrinsic attribute of tangible property, its value can never exceed RCNLD, so that a valuation in excess of RCNLD could only be attributable to the direct assessment of intangible property.

The resolution of this appeal thus turns upon the question whether, as an intrinsic attribute of tangible property, its actual value can never exceed RCNLD. New York courts have held that RCNLD normally is a ceiling on the value of property, even though a capitalization of earnings approach may yield a higher figure. (See, e.g., *People* ex rel.

*Manhattan Square Beresford* v. *Saxon* (1940) 284 N.Y. 145 [29 N.E. 2d 654].) The Maryland courts, however, have rejected the use of reproduction cost as a ceiling. (See, e.g., *Bornstein* v. *State Tax Comm.* (1962) 227 Md. 331, 337-338 [176 A.2d 859, 96 A.L.R.2d 661].) The issue is new in California.

Appellant contends that RCNLD is a natural upper limit on the value of tangible property because no one would pay more for something than the cost to replace it. This oversimplifies the mechanics of valuation. One authority has stated that this concept is normally applicable in a free and competitive market, but not to a regulated utility; in the latter case the value of property is indirectly controlled, and the capitalization of income indicator more appropriately sets the ceiling on value: "In the valuation of public utility property, it is important to keep in mind that the price of the product sold is government regulated and thus the value of the property as a whole is indirectly controlled. A ceiling, in effect, is placed on the fair value obtainable from so-called ready, willing, able, and informed buyers. Although less frequently quoted in legal definitions of value, the earnings concept of value is deemed more meaningful in appraising practice." (Ring, *Valuation Principles* (1972) 25 Nat.Tax J. 233, 235; see also Appraisal of Railroad and Other Public Utility Property for Ad Valorem Tax Purposes (1954) Nat. Assn. of Tax Administrators, Rep. of the Com. on Unit Valuation, p. 8.) Capitalization of earnings is the preferred approach for the appraisal of improved real property and personal property when reliable sales data are not available and the cost approaches are unreliable because the reproducible property is subject to legal restrictions on income that are unrelated to cost. (Cal. Admin. Code, tit. 18, § 8, subd. (a).)

Another authority states that RCNLD should not be used as a ceiling on value in a "thin market" (or oligopolistic) situation, because in an assured "thin market" property would sell for the capitalized value of the earnings it would produce rather than its replacement cost. (Gifford, *Should replacement cost impose a ceiling on real property tax assessments?* (1967) 26 J. Taxation 314, 315.)

Appellant's property in the four counties was valued as an integrated unit. It has been suggested that where public utility property receives unit appraisal (appraisal of integrated property as a whole without reference to the value of its component parts) rather than summation appraisal (appraisal of the whole by adding together fractional ap-

praisals of the component parts), RCNLD is not a useful indicator of value. A computation of RCNLD fails to account for the effect of factors such as obsolescence or going-concern value on the value of the property as a unit. In such cases, the appropriate indicators of value are capitalization of income and market prices of stock and debt. (Appraisal of Railroad and Other Public Utility Property for Ad Valorem Tax Purposes, *supra,* Nat. Assn. of Tax Administrators, Rep. of the Com. on Unit Valuation, pp. 2-3.) "The cost approach is a summation appraisal, and as such may not be regarded as a measure of unit value. It is, however, good information to guide judgment, and therefore is a proper evidence to consider in finding value." (*Id.,* p. 3.) As "good information to guide judgment," RCNLD may as a matter of choice be used as a ceiling on value, but such use is not an absolute rule of appraisal practice.

The propriety of using RCNLD as a ceiling on value thus depends upon the market in which the taxpayer operates and the method by which its property is appraised. If the taxpayer is a regulated utility whose income is controlled, if the taxpayer operates in an oligopolistic market, or if its property is subject to unitary appraisal, the use of RCNLD as an upper limit on value may not be appropriate. The eminent domain case cited by appellant, which recognizes that RCNLD has been used as a ceiling on the valuation of condemned property (see *South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal. App.3d 944, 976 [133 Cal.Rptr. 166], cert. dism. 434 U.S. 801 [54 L.Ed.2d 59, 98 S.Ct. 28]), is to be distinguished on these bases. It reflects the general proposition that RCNLD is normally a ceiling on value in a free and competitive market.

It cannot be said that, as an absolute rule of appraisal practice, and as an intrinsic attribute of tangible property, RCNLD is a ceiling on value. Thus it cannot be said that, as a matter of law, an assessment in excess of RCNLD is necessarily arbitrary, in excess of discretion, or in violation of standards prescribed by law. (See *Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d at p. 23.)

Appellant argues that the records contain no evidence as to the nature of the market in which appellant operates or the regulation of appellant's income, and that the board's RCNLD figures were developed as an indicator of unitary value. But if a method of valuation that does not use RCNLD as a ceiling on value may be appropriate in certain situations, appellant's argument amounts to a claim that the

assessor erroneously applied an intrinsically sound method of valuation in these cases. To obtain judicial review of such an issue, appellant had the burden of presenting to the board evidence that the abandonment of RCNLD as a ceiling on the value of its property would be unfair or inequitable. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d at p. 23; *Campbell Chain Co.* v. *County of Alameda, supra,* 12 Cal.App.3d at p. 258.) The records in the present cases contain no such evidence.

Appellant contends that the state board, in computing the capitalization of income from appellant's property, erroneously failed to make necessary deductions of income attributable to enterprise activity. ■ Where a capitalized earnings approach is used in valuing property, income derived in large part from enterprise activity, which is subject to income taxation, may not be ascribed to the property being appraised. (*California Portland Cement Co.* v. *State Bd. of Equalization* (1967) 67 Cal.2d 578, 584-585 [63 Cal.Rptr. 5, 432 P.2d 700]; *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d at p. 572.)

Appellant essentially argues that a valuation of property in excess of RCNLD necessarily includes income attributable to enterprise value. This position, however, is founded upon the erroneous premise that a valuation in excess of RCNLD will always exceed the value of the tangible property. If the value of tangible property may in some cases properly exceed RCNLD, then a valuation in excess of RCNLD does not necessarily include income attributable to enterprise value.

■ Appellant's contention may also be construed as an argument that the board erroneously applied an intrinsically sound method of valuation, the capitalization of earnings, without deducting income that arose in large part from enterprise activity. But appellant presented no supporting evidence before the board. It thus failed to overcome the presumption of correctness of the assessments, and the board's decision could not be overturned by the trial court for want of support by substantial evidence. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d at p. 23; *Campbell Chain Co.* v. *County of Alameda, supra,* 12 Cal.App.3d at p. 258.)

Appellant contends that the board was bound by its previous policy of using RCNLD as a ceiling on value because this policy constituted a regulation and was not repealed pursuant to the procedure prescribed by statute for adoption, amendment and repeal of regulations, which in-

cludes notice and hearing requirements. (See Gov. Code, §§ 11420, 11423-11425.) To constitute a regulation, however, this policy must have been adopted as such by the board, pursuant to the requirements of the Government Code. (See Gov. Code, §§ 11371, subd. (b), 11420, 11423-11425.) The records do not establish that the board policy of using RCNLD as a ceiling on value was adopted as a regulation, and neither the policy nor its rescission appeared in the board's published regulations on valuation. (See Cal. Admin. Code, tit. 18, §§ 1-60.)

Appellant also contends that the board was bound by its published interpretation that "[t]he California Constitution exempts franchises from property tax, and it is considered that any value greater than reproduction cost new less depreciation is franchise value." Appellant argues that this interpretation was too well established to be changed without legislation, citing *County of Sacramento* v. *Hickman, supra,* 66 Cal.2d 841, 851.) In *Hickman,* the court upheld the constitutionality of the revision of Revenue and Taxation Code section 401 to provide for taxation of property at 25 percent of its full cash value. Although the Constitution then provided that "[a]ll property subject to taxation shall be assessed for taxation at its full cash value" (Cal. Const., art. XIII, § 37, repealed Nov. 5, 1974),[4] this provision was based upon a predecessor statute containing virtually identical language, and the statute had so long been construed as authorizing assessment at a uniform fraction of full value that the construction attained constitutional status when the constitutional provision was enacted: "When for more than 60 years a statute has been construed in a consistent manner by the administrative agencies charged with its enforcement, and the practice has been consistently acquiesced in by the Legislature and recognized by the courts, its language comes to the Constitution clothed in that special meaning." (*County of Sacramento* v. *Hickman, supra*, 66 Cal.2d at p. 851.)

The present cases are to be distinguished from *Hickman.* The board's policy of using RCNLD as a ceiling on value has not been "consistently acquiesced in by the Legislature and recognized by the courts." (66 Cal.2d at p. 851.) Although the board might have adhered to the practice of using RCNLD as a ceiling on value since the Constitution was amended in 1933 to exempt utilities' franchises from property taxation, the policy was not published until 1969. In *Hickman,* the first docu-

---

[4]The Constitution now provides that all property "shall be assessed at the same percentage of fair market value." (Cal. Const., art. XIII, § 1, subd. (a).)

mentation of the statutory construction adhered to by the administrative agency appeared approximately 59 years before the successor constitutional provision was enacted. (*Id.*, at p. 848.) The board was thus free to alter its method of assessing appellant's property, subject to requirements of fairness and uniformity. (See *Host International, Inc. v. County of San Mateo* (1973) 35 Cal.App.3d 286 [110 Cal.Rptr. 652] [upholding assessor's adoption of capitalization of income indicator in place of replacement cost indicator].)

The judgments are affirmed.

Caldecott, P. J., and Rattigan, J., concurred.