The WYOMING BOARD OF EQUALIZA-
TION, and Rudolph Anselmi, Reno Ha-
kala, and Doran Lummis, as Commis-
sioners Thereof, Appellants (Defend-
ants),

v.

The STATE of Wyoming, ex rel. BASIN
ELECTRIC POWER COOPERATIVE, a
Corporation, Appellee (Relator).

No. 5471.

Supreme Court of Wyoming.

Dec. 1, 1981.

Steven Freudenthal, Atty. Gen., and Ron-
ald P. Arnold, Asst. Atty. Gen., Cheyenne,
for appellants.

D. N. Sherard and Richard A. Stacy, Wheatland, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Appellant, Wyoming Board of Equalization, has appealed from a peremptory writ of mandamus issued by the district court. The writ of mandamus, filed on January 5, 1981, ordered the Board of Equalization to hold a hearing, as requested by Basin Electric, pursuant to § 39–2–201(d), W.S.1977. As a result of the district court's decision, appellant has raised the following issues for our consideration:

(1) What is the scope of the hearing provided under § 39–2–201(d)?

(2) Was the issuance of the writ of mandamus ordering the appellant to hold a hearing pursuant to § 39–2–201(d), W.S. 1977, proper, or did the Board have a right to impose a stay on these proceedings until appellee sought judicial review of the rule under § 9–4–114, W.S.1977, 1981 Cum.Supp.?

The issues presented by the appellant pose important questions concerning the powers of the State Board of Equalization and also administrative procedure generally.[1]

## FACTS

On August 6, 1980, the State Board of Equalization, pursuant to the Wyoming Administrative Procedure Act, held a public hearing for the purpose of adopting a new rule for the valuation of electric utilities that were under construction. Appellee, Basin Electric, participated in the proceedings along with many other interested parties. Soon after, on August 29, 1980, the Board adopted the following rule pursuant to § 39–2–201, W.S.1977: [2]

"Beginning with tax year 1980, the level of assessment for electric utilities under construction is the use of a twenty percent (20%) multiplier times the installation cost."

Basin Electric's property was assessed by the Board in accordance with the new rule. Subsequently, on September 15, 1980, Basin filed with the Board a timely notice of appeal from assessment in which they requested a hearing pursuant to § 39–2–201(d), W.S.1977. Believing that Basin essentially wanted to attack the new rule itself rather than the rule's application, the Board issued an order staying the appeal under § 39–2–201(d) until such time as Basin directly attacked the rule pursuant to the judicial-review provision (§ 9–4–114, W.S.1977, Cum.Supp.1980) of the Wyoming Administrative Procedure Act.

As a result of the Board's action, Basin Electric petitioned the district court to issue a writ of mandamus requiring the Board to hold the requested hearing under § 39–2–201(d). Basin also filed a petition seeking review of the rule under § 9–4–114.

The district court issued a judgment and order granting the writ of mandamus and the Board subsequently filed its appeal with this court.

## SCOPE OF § 39–2–201(d), W.S.1977

Section 39–2–201(d) of the Wyoming statutes allows a taxpayer to appeal an assessment levied upon him by the Board of Equalization. Specifically the statute provides:

"(d) Following determination of the taxable value of property subject to subsec-

---

1. The Wyoming Administrative Procedure Act is embodied in §§ 9–4–101 through 9–4–115, W.S.1977.

2. Specifically the Board has the power to value the property of electric utilities under § 39–2–201(a)(iii), W.S.1977. This section provides:

"(a) The board shall annually value the following property for taxation:
"(i) The gross product of all mines and mining claims;

"(ii) Property of pipeline companies;
"(iii) Property of electric utilities;
"(iv) Property of railroad companies;
"(v) Property of car companies;
"(vi) Property of telephone and telegraph companies which have more than two thousand dollars ($2,000.00) in assessed value;
"(vii) Property of other public utilities."

tion (a) of this section, the board shall notify the taxpayer of the value assessed by mail. *The person assessed may file written objections to the assessment within fifteen (15) days following receipt of notice and appear before the board at a time specified by the board.*" (Emphasis added.)

The Board contends that this statute does not grant Basin Electric the right to challenge the rule it promulgated on August 29, 1980. Rather, it contends that the hearing provided for by the section only allows a taxpayer to challenge the assessment levied upon him, in other words, the taxpayer can only get a hearing concerning application of the rule. We agree and will reverse.

■ Although we have not had a prior opportunity to ascertain the scope of § 39–2–201(d), we have, in the past, discussed rules to guide us in the area of statutory construction. It is a rule of common application that where a statute contains plain and unambiguous language a court cannot impose its own meaning on the statute because there is no need to resort to rules of construction. *Hayes v. State*, Wyo., 599 P.2d 558 (1979); *State ex rel. Director, Worker's Compensation Division v. Tallman*, Wyo., 589 P.2d 835 (1979).

Through application of the above rules of construction, it appears clear that § 39–2–201(d) embodies a procedure which allows a taxpayer to challenge assessments levied upon it by the Board. The procedure specified in the statute grants the taxpayer the right to a hearing before the Board. Thus, the only question presented for our determination concerns the scope of that hearing.

■ As to the type of hearing required under § 39–2–201(d), we must agree with the Board that in enacting this provision the legislature anticipated attacks by a taxpayer upon the application of an assessment rule, rather than attacks upon the assessment method itself. In this case, Basin is permitted by § 39–2–201(d) to challenge the application of the "twenty percent" rule adopted by the Board on August 29, 1980. Such a challenge would necessarily involve factual issues concerning the amount of Basin's property that actually falls into the "under construction" category covered by the rule. However, Basin cannot, as it has argued, also raise the constitutional issues surrounding the "twenty percent" rule at the hearing provided for by § 39–2–201(d).[3] The reason that Basin cannot raise these issues at such a hearing is that they amount to direct attacks upon the validity of the Board's rule, and are not, as Basin has argued, attacks upon the Board's application of the rule to Basin's property. In summary, Basin is entitled to a hearing under § 39–2–201(d); however, at that hearing it can only raise the factual issues surrounding the actual amounts of its property that could be considered by the Board as being "under construction." The interpretation we have given to § 39–2–201(d) is consistent with the view expressed by the California Court of Appeals in *ITT World Communications, Inc. v. County of Santa Clara*, 101 Cal.App.3d 246, 162 Cal.Rptr. 186 (1980). There it was said:

"In reviewing an assessment, a challenge to the result reached by an assessor after applying a sound valuation method is to be distinguished from a challenge to the validity of the method itself * * *." 162 Cal.Rptr. at 189.

We believe § 39–2–201(d) was designed to provide the taxpayer with a means to challenge the Board's result, rather than to provide an opportunity to second-guess the Board in relation to the assessment method itself. Since Basin obviously desires to attack the "twenty percent" assessment rule directly, it has an available avenue of attack under the judicial-review provisions of the Wyoming Administrative Procedure

---

**3.** Basin alleges that the 20% rule violates the uniformity provisions of Art. 15, § 11 and Art. 1, § 28 of the Wyoming Constitution, and also that the rule violates the due-process provisions of Art. 1, § 6, Wyoming Constitution, and those of the 14th Amendment of the United States Constitution. These specific issues are not, however, presented for our review by this appeal.

Act. Specifically, it can avail itself of the provisions under § 9–4–114, W.S.1977, Cum. Supp.1981. The court is aware that at the time of this writing, Basin has already taken such action by filing an appeal from the rule-making proceedings in the district court.

Now that we have determined the scope of the hearing under § 39–2–201(d), it is necessary to answer questions relating to the nature and the timing of that hearing.

■ Basin has asserted that § 39–2–201(d) entitles it to a trial-type hearing such as those provided for under § 9–4–107, W.S. 1977. We agree with this assertion. Although § 39–2–201(d) does not specifically state what type of hearing is authorized, it also does not exclude the Board's actions from the provisions of the Wyoming A.P.A.[4] Rather, as both parties agree, and as § 39–1–302, W.S.1977, provides, the Board is specifically required to abide by the Wyoming Administrative Procedure Act. Considering the scope of the hearing discussed above, it becomes clear that such a hearing should necessarily be held in accordance with the contested-case procedures of § 9–4–107. Thus, in presenting a challenge to application of the "twenty percent" rule under § 39–2–201(d), Basin is entitled to a full-blown trial-type hearing. *Scarlett v. Town Council, Town of Jackson*, Wyo., 463 P.2d 26 (1969). Included within this type of hearing is the right to notice, the right to cross-examine witnesses, the right to appear with counsel, and the right to a written statement containing the Board's findings of fact and conclusions of law. *First National Bank of Thermopolis v. Bonham*, Wyo., 559 P.2d 42 (1977).

■ As to the timing of this trial-type hearing, the Board urges that the provisions of § 39–2–201(d) give it full discretion to set the time for the hearings. Specifically, the Board points to the language in the statute which says: " * * * appear before the board at a time specified by the board." Basin, on the other hand, argues that the Board is not given full discretion to set the time for a hearing, and urges that the statute requires the hearing to be held at a reasonable time. Once again, the language of § 39–2–201(d) is of little assistance. Although the statute does provide the Board with discretion in the setting of the required hearing, this type of discretion is common to administrative procedure. See: Davis, Administrative Law Treatise, § 8.08, (1958). However, it has been suggested that even in the presence of this discretion courts should not leave agencies free to decide questions of fairness of procedure as they see fit. Davis, Administrative Law Treatise, § 8.03 (1958). Considering that we have already held that the Board must follow the contested-case procedures of § 9–4–107 when holding the § 39–2–201(d) hearing, we shall look to those procedures in deciding the timing issue. Section 9–4–107(k), W.S.1977, provides in part that:

" * * * Every agency shall proceed with reasonable dispatch to conclude any matter presented to it except that due regard shall be had for the convenience and necessity of the parties or their representatives."

This language suggests that it is the duty of every agency controlled by the Act to settle the matters before it as expediently as possible, with regard to maintaining a party's right to a full and fair hearing. We consider the language of § 9–4–107 to be very supportive of Basin's position, and thus we hold that § 39–2–201(d) requires the Board to set the time for the hearing within a reasonable period while strictly adhering to the standard discussed above.

The fact that § 39–2–201(d) granted Basin a right in this case to challenge the application of the "twenty percent" rule and that the Board is required to hold such a hearing within a reasonable time is not, however, dispositive of the issue surrounding the issuance of the writ of mandamus. This issue will be discussed in the next section.

4. Montana has a provision similar to § 39–2–201(d) embodied in Mont.Code Ann. § 15–23–102 (1981) which specifically excepts the necessity of following the contested-case procedures when conducting the hearing.

WAS THE WRIT OF MANDAMUS PROPER OR COULD THE BOARD PROPERLY PLACE A STAY ON THE § 39–2–201(d), W.S.1977, HEARING?

In this case, the district court issued a peremptory writ of mandamus to compel the Board of Equalization to hold the hearing required by § 39–2–201(d). The power to provide such a remedy is authorized by § 1–30–105, W.S.1977. This section provides:

"When the right to require the performance of the act is clear and it is apparent that no valid excuse can be given for not performing it, a court may allow a peremptory mandamus. * * *"

Under the terms of this statute, the district court was required to find, and did find, that Basin's right to a hearing under § 39–2–201(d) was clear and also that the Board had no excuse for its failure to proceed. Thus, the court removed the stay placed on the hearing by the Board and ordered it to promptly proceed with the § 39–2–201(d) hearing.

■ We cannot agree totally with the district court's conclusion that the Board's duty in this case was clear. We said in *State ex rel. Bradley v. City of Sheridan*, Wyo., 513 P.2d 647, 649 (1973), that a writ of mandamus should only issue where the duty to perform is clear, certain and undisputable. So, in order for the writ to be properly issued in this case, the Board's duty under § 39–2–201(d) must not only be authorized but required. *LeBeau v. State*, Wyo., 377 P.2d 302, 303 (1963). In light of what we have heretofore determined as to the scope of the hearing required by § 39–2–201(d), it becomes clear that, had Basin only desired to raise issues concerning what property should not have been included for assessment under the "twenty percent" rule, then the Board could not avoid its duty to hold a hearing on those factual issues. This is the type of challenge that is permitted by § 39–2–201(d) and the kind of challenge that contemplates an opportunity to be heard. We perceive that, in the case

at bar, Basin was much more upset with the "twenty percent" rule than it was with the rule's application to its property. This is evidenced by the fact that Basin's principal attack was aimed at having the rule overturned, rather than having its assessment lowered. As we have already stated, the Board is not required by § 39–2–201(d) to grant a hearing to a party desiring to attack the validity of an assessment method chosen by the Board. The proper avenue of attack for these issues is to follow the judicial-review provisions of the Wyoming Administrative Procedure Act.

We would say in summary, then, that § 39–2–201(d) requires the Board of Equalization to give a party an opportunity to be heard on issues concerning the application of an assessment, but it does not require nor authorize the Board to allow a party to attack the method used to arrive at that assessment. In a matter such as is before us here, where a party seeks to raise issues concerning the validity of the Board's assessment rule under the guise of the hearing provision of § 39–2–201(d), we hold that the Board has no duty to provide a hearing on such issues. It, therefore, follows that the Board can properly impose a stay upon the proceedings until such time as the party has availed himself of his right to appeal the efficiency of the rule under § 9–4–114. As we have previously said, a right to appeal is an adequate remedy at law and mandamus cannot issue where a party is possessed of such a remedy. *LeBeau*, supra, at 304.[5]

Since appellee improperly sought to attack the validity of the August 29, 1980, "twenty percent" rule under the § 39–2–201(d) hearing provision, the Board of Equalization's action staying this proceeding until Basin availed itself of its right to appeal the rule under § 9–4–114 was proper. The Board had no duty to hold a hearing on such claims under § 39–2–201(d) and thus the district court erred in issuing a writ of mandamus requiring the Board to hold such a hearing.

5. See also § 1–30–104, W.S.1977, which provides:

"The writ must not be issued when there is an adequate remedy at law. * * *"

If the district court determines that the "twenty percent" rule is invalid, then there will be no need for the Board to hold the hearing requested by Basin under § 39–2–201(d). If, however, the district court should determine that the twenty-percent rule is valid, then the Board is required by the holding in this case to promptly set a time for review of Basin's claims concerning the proper amount of its property that should be assessed under the rule. Such a hearing, if necessary, should be held in accordance with the views expressed herein.

The judgment of the lower court is reversed.

THOMAS, Justice, dissenting, with whom RAPER, Justice, joins.

I must dissent from the views of the majority in this case. I would vote to affirm the judgment of the district court in all respects. I do not agree that the Board of Equalization has any option about holding a hearing under the clear language of § 39–2–201(d), W.S.1977. The taxpayer is entitled to the hearing, and to have it held promptly. It is subject to levy and collection of taxes based on the assessment within a few months after the assessment. Those entities which will receive the benefits of taxes collected are entitled to have the liability settled so that the taxes will be paid promptly.

My basic disagreement with the views of the majority is a conclusion which I understand to mean that the taxpayer can only challenge the constitutional or statutory validity of the rule in an appeal taken pursuant to the Administrative Procedure Act from the rule-making process. While the taxpayer certainly is entitled to that remedy, it is purely an alternative remedy to the right of the taxpayer to challenge the validity of the rule when the rule is applied to it.

The statutes as applied to electric utilities and other public utilities, § 39–2–201 and § 39–2–206, W.S.1977, make it clear that in this instance the State Board of Equalization serves not only as the entity which identifies the value of property subject to taxation, but in effect it performs the assessment function as well. The hearing provided by § 39–2–201(d), W.S.1977, furnishes the only opportunity for the taxpayer to attack the assessment before the assessor prior to the levy of the tax. This procedure parallels that provided before county boards of equalization pursuant to § 39–2–302, W.S.1977.

I am convinced that at such a hearing the taxpayer is entitled to contest the assessment not only on the basis of an improper application of the assessing method, but the taxpayer must also be afforded an opportunity to attack the lawfulness of any rule which is applied to accomplish the assessment. When the rule is applied to the taxpayer he should not be foreclosed from an opportunity to challenge the lawfulness of the rule, but his challenge appropriately should extend to both the lawfulness of the rule and the manner in which a lawful rule is applied to him.

The majority opinion cites *ITT World Communications, Inc. v. County of Santa Clara*, 101 Cal.App.3d 246, 162 Cal.Rptr. 186 (1980), and quotes a part of the language of that opinion. The inference that is left is that the California Court of Appeals would limit the scope of the hearing in an instance such as this. I submit that that is not what the California court did. I call attention to further language from that opinion:

"If the taxpayer challenges in court the validity of the valuation method itself, it must be determined as a question of law whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of standards prescribed by law. (*Bret Harte Inn, Inc. v. City and County of San Francisco*, supra [16 Cal.3d 14, 127 Cal.Rptr. 154, 544 P.2d 1354 (1976)], 16 Cal.3d at p. 23, 127 Cal.Rptr. 154, 544 P.2d 1354). Appellants' primary contention, that the method used by the Board to assess its property was itself illegal because it did not retain the use of RCNLD as a ceiling on value, invokes the latter scope of review. This court must determine whether the abandonment of RCNLD as a ceiling by the Board was arbitrary, in excess of discretion or in

violation of the standards prescribed by law." *ITT World Communications, Inc., v. County of Santa Clara*, 162 Cal.Rptr. at 190.

The California court holds that the review of the application of the assessment method is essentially a review of a question of fact, and thus invokes the usual standards of review relating to matters of fact, which would be decided initially by the Board of Equalization. However, with respect to the lawfulness of the method, the review then, in California, would be a review of the lawfulness of the rule in the context of it being arbitrary, in excess of discretion, or in violation of the standards prescribed by law.

Fairness to both the taxpayer, and the Board of Equalization, dictates that this challenge be first presented to the Board of Equalization. Our holding in *Wyoming Bancorporation v. Bonham*, Wyo., 527 P.2d 432 (1974), requires that the issue be raised before the Board of Equalization and that the taxpayer place in the record evidence to support its position before the taxpayer can seek judicial review.

I would at this juncture note a difference in the scope of the hearings available before the Board of Equalization with respect to its rule-making powers and with respect to the hearing provided by § 39–2–201(d). The majority opinion correctly identifies the statutory hearing as one invoking the adversary process. It must be considered a contested case governed by the provisions of § 9–4–107, W.S.1977. That is not true of the hearing with respect to the rule-making procedure. I have some very grave concerns about due process if the right of a taxpayer to challenge the lawfulness of a rule as applied to it must depend upon its participation in a hearing in which the adversary process normally would not be invoked, and certainly was not invoked in this instance. We have held in *Tri-State Generation and Transmission Association, Inc., v. Environmental Quality Council*, Wyo., 590 P.2d 1324 (1979), that the rule-making process does not have to be conducted like a contested case. To much the same effect is

*U. S. Steel Corporation v. Wyoming Environmental Quality Council*, Wyo., 575 P.2d 749 (1978).

I am satisfied that a taxpayer such as Basin Electric Power Cooperative does have alternative remedies in a situation such as this. It can, if it chooses, appeal the rule-making proceeding. It can, as it seeks to do here, attack the method of valuing its property for tax assessment and the application of that method before the State Board of Equalization, the assessing authority. It can seek relief by way of an action presented pursuant to the Uniform Declaratory Judgments Act, §§ 1–37–101 to 1–37–115, W.S.1977. It can, pursuant to § 39–3–203, W.S.1977, bring an action to enjoin an illegal assessment, levy or collection of taxes. While it seems that the taxpayer enjoys a plethora of remedies, it well may be that one remedy would promise a better possibility of success than another.

There may be some inhibitions such as that presented in *City of Cheyenne v. Sims*, Wyo., 521 P.2d 1347 (1974), in which we held that the declaratory judgment remedy could not be pursued in the absence of exhaustion of administrative remedies. Therefore, the taxpayer here might well have believed that it was necessary to pursue the hearing before the State Board of Equalization before proceeding with an action pursuant to the Uniform Declaratory Judgments Act. In any event, it is clear that the taxpayer in this instance enjoys remedies that it can pursue alternatively, and is not obligated to elect among them, but can pursue any or all of them. That is what it seeks to do, and I support it in that position.

Finally I am not persuaded that the record here really discloses that in this case Basin was much more upset with the "twenty-percent" rule itself than it was with the rule's application to its property. An examination of the pertinent portions of Basin's "Notice of Appeal to Assessment, Written Objections to Assessment, and Allegations of Discriminatory Assessment" which was filed before the Board of Equalization of the State of Wyoming reflects the following:

"7. That the 1980 assessment by the Board or Appellant's Property ignored inflationary trends since 1967 as to all property of the Appellant and was arbitrary, capricious, and was characterized by an abuse of discretion and discriminated against the Appellant as to all of its property under construction as compared with the assessments of the properties of other utilities, industries, commercial establishments, residential home-owners, and other property owners within the State of Wyoming;

"8. That the Board, among other reasons for the adoption of the 1980 assessment rule, stated that the twenty percent (20%) multiplier would maintain a level of revenue to meet the needs of political subdivisions; that the Board is mandated by law to establish and maintain uniformity of assessment of properties within the State of Wyoming and it acted in excess of its powers when it based its action, wholly or partially, on the anticipated revenue needs of political subdivisions in establishing an assessment; and that the Board clearly exceeded its powers in promulgating a rule establishing an assessment on one property owner or one class of property owners to maintain a revenue level to meet purported revenue needs of political subdivisions; * * * "

The argument of counsel for Basin Electric Power Cooperative before the district court emphasizes that the lawfulness of the rule was only a part of its concern about the assessment. The preponderance of counsel's remarks related to the issues posed by paragraph seven quoted above.

The Board of Equalization should not be permitted to avoid its statutory obligation on the basis of sophistry. The district court should be affirmed.