[No. F009453. Fifth Dist. Sept. 18, 1989.]

COUNTY OF STANISLAUS, Plaintiff and Appellant, v.
COUNTY OF STANISLAUS ASSESSMENT APPEALS BOARD,
Defendant and Respondent;
POST-NEWSWEEK CABLE, INC., Real Party in Interest and
Respondent.

COUNSEL

Michael H. Krausnick, County Counsel, E. Vernon Seeley, Assistant County Counsel, and Teresa Vig Rein, Deputy County Counsel, for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Philip C. Griffin, Deputy Attorney General, De Witt W. Clinton, County Counsel (Los Angeles), and Albert Ramseyer as Amici Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Folger & Levin, Michael A. Kahn, Richard Keenan, David Moyce and Christeta S. Paguirigan for Real Party in Interest and Respondent.

William M. Winter, Shartsis, Friese & Ginsburg, Paul M. Gordon, Douglas Mo and Michael J. Madison as Amici Curiae on behalf of Real Party in Interest and Respondent.

OPINION

FRANSON, P. J.—

STATEMENT OF THE CASE

Real party in interest and respondent Post-Newsweek Cable, Inc. (Post-Newsweek), applied to defendant and respondent County of Stanislaus Assessment Appeals Board (Board) to reduce its property tax assessments for the years 1982-1983 through 1985-1986. This application was in response to the county assessor's adjustment of the 1982 roll value from $5,455,599 to $16,125,446 in 1985. The assessor applied to the Board to increase the assessed value of Post-Newsweek's real and personal property from $16,125,446 to $18,350,000.

At the Board hearing, Post-Newsweek contended its cable television franchises were intangible assets exempt from ad valorem property taxes. It presented expert testimony concerning the component values of the franchises without recognition of any possessory interest in the franchises. Appellant County of Stanislaus (County) did not challenge the assertion the franchises were intangible assets but contended the tangible assets were enhanced by the value of the franchises and should be assessed at $18,350,000. The parties stipulated that the 1982 value for the entire

system, including all taxable and nontaxable property, was $19.4 million. The Board found the franchises to be intangibles that could not be taxed and reduced the assessed value of Post-Newsweek's real and personal property for the 1982-1983 tax year to $5,455,599.

County thereafter applied to the superior court for issuance of a peremptory writ of mandate ordering the Board to set aside its decision. The court held the Board's findings were supported by the evidence and denied the application. County appeals from the judgment denying the peremptory writ.

The issue before this court is whether a cable television franchise is subject to real property tax. We hold that the franchisee's possessory interest is subject to such a tax; however, the franchisee's right to charge a fee and to make a profit from the operation of the business is a constitutionally protected nontaxable asset. Nevertheless, as we shall point out, in valuing the possessory interest for assessment purposes, the assessor may take into consideration the presence of the intangible assets necessary to put the possessory interest to beneficial or productive use in the operation of the cable television system. We remand the case for reassessment.

## FACTS

Post-Newsweek is the holder of nonexclusive "franchises"[1] granted by the County and the cities of Modesto and Oakdale to construct, operate and maintain a community antenna television (CATV) system in Modesto, Oakdale and certain unincorporated areas of Stanislaus County. This system consists of antennae, coaxial cables, wires, electronic devices, conductors, equipment and facilities designed, constructed and used for the purpose of providing television and FM radio service by cable or through related facilities. Although these franchises are nonexclusive, no franchising authority in Stanislaus County has granted more than one such franchise in the same area. Each franchise requires the franchisee to pay fees for the rights and privileges granted. Under Government Code section 53066, the maximum annual fee that a cable television company has to pay for the

---

[1] The use of the word "franchise" does not establish the nature of the right involved. " 'If the purpose is simply to [regulate] a franchise will not be created, even though the word "franchise" is used.' " (*Winkie v. Turlock Irr. Dist.* (1937) 24 Cal.App.2d 1, 5 [74 P.2d 302]; 26 C. J. 1024.) The ordinances in question define "franchise" as "any non-exclusive authorization granted hereunder in terms of a franchise, privilege, permit, license or otherwise. . . ." (See, e.g., City of Modesto Ord. No. 1741-C.S., § 11-4.01, subd. (h).) Also, the Cable Communications Policy Act of 1984 (Cable Act) and the California Government Code all speak in the alternative of authorization to "franchise" or to "license" cable television systems. (Cable Act, 47 U.S.C. § 522(8); Gov. Code, § 53066.) Thus, the court must look to the nature of the right involved, and not the labels used, in determining whether the right the County seeks to tax is an assessable interest in real property.

franchise is 5 percent of its gross receipts. The ordinances authorizing the franchises provide that these fees are in lieu of any business license, occupation tax or similar levy.

DISCUSSION

I.  *Standard of review.*

The County asserts this case should be reversed because the Board failed to include Post-Newsweek's franchise rights as assessable property. Post-Newsweek, however, contends this court is precluded from deciding whether any aspects of the CATV franchises are subject to property tax due to the County's failure to raise this issue at the Board hearing. As pointed out by Post-Newsweek, the County conceded the franchises were nontaxable intangibles. At the hearing the County took the position the franchises had no value apart from the tangible property but the franchises did enhance the value of the tangible assets. ■■ Post-Newsweek argues the County cannot now change its tax theory to assess additional property, and therefore, the "sole issue on this appeal is whether substantial evidence supports the Board's decision as to the 1982 fair market value of the assessed real and personal property . . . ."

In its factual findings, the Board stated: "1. Intangibles cannot be taxed. [¶] 2. The franchise of the taxpayer is an intangible."

This conclusion was the starting point for the Board's valuation of Post-Newsweek's assessable real and personal property. The County argues this conclusion is an incorrect statement of law. By challenging the validity of the premise upon which the Board relied in reaching its decision, the County has presented this court with a question of law. (*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354].) Therefore, this court is not confined to determining whether substantial evidence supports the Board's decision. Rather, we can reach the legal issue of the taxability of the franchises. (*Ibid.*) Post-Newsweek presented no evidence of the value of its possessory interest in the franchises. As we shall explain, this was a fundamental error of law which requires a remand for reassessment of the possessory interest.

■■ Similarly, the assessor's earlier assertions that Post-Newsweek's possessory interests should not be separately assessed and that the franchises had no value apart from the tangible property do not preclude review of this issue. In the collection of taxes, the general rule is the government cannot be estopped from collecting because of an administrative official's erroneous ruling. (*Burhans v. County of Kern* (1959) 170 Cal.App.2d 218, 226 [338 P.2d 546].) ■■ ■■ ■■ ■■ ■■ Further, the assessor's duty to

assure uniformity in taxation bestows upon him the power to retroactively collect taxes due. (*General Dynamics Corp.* v. *County of San Diego* (1980) 108 Cal.App.3d 132, 137 [166 Cal.Rptr. 310].)[2] Thus, the tax theories pursued by the assessor do not limit the County's ability to collect taxes to which it is entitled.

II. *The right to use and to occupy a public right-of-way is a taxable possessory interest.*

All property in California is taxable if not exempt under federal or state law. (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, § 201.) " 'Property' includes all matters and things, real, personal, and mixed, capable of private ownership." (Rev. & Tax. Code, § 103.) Real property includes a possessory interest in real property. (Rev. & Tax. Code, § 104; *American Airlines, Inc.* v. *County of Los Angeles* (1976) 65 Cal.App.3d 325, 328 [135 Cal.Rptr. 261].) Such a possessory interest is defined as "(a) Possession of, claim to, or right to the possession of land or improvements, except when coupled with ownership of the land or improvements in the same person. [¶] (b) Taxable improvements on tax-exempt land." (Rev. & Tax. Code, § 107.)

The concept of a taxable possessory interest originated for policy reasons. Since much of the land in California was either federal or state owned, a method for taxing persons who used that land for their own benefit was created to generate revenue. (*Freeman* v. *County of Fresno* (1981) 126 Cal.App.3d 459, 462-463 [178 Cal.Rptr. 764].) In *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610 [184 P.2d 879], the California Supreme Court outlined three essential elements for determining if a possessory interest existed. "The agreement had to confer use and possession (1) for a reasonably certain determinable period, (2) which was exclusive against all the world, including the rightful owner, and (3) which generated a valuable private benefit." (*Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d at p. 463.)

Applying this possessory interest concept to a CATV franchise, the court in *Cox Cable San Diego, Inc.* v. *County of San Diego* (1986) 185 Cal.App.3d 368 [229 Cal.Rptr. 839] held that a cable company's rights-of-way under the authority granted by the various public entities constituted " 'an assessa-

---

[2] Post-Newsweek's argument that the four-year statute of limitations under Revenue and Taxation Code section 532 bars a possessory interest assessment for the 1982 base year must be rejected. Post-Newsweek bases this argument on the assertion that "the County Assessor to this day has never acted to levy such assessments against Post-Newsweek for a 1982 base year." However, in 1982 and 1983, Post-Newsweek received statements for taxes attributed to its possessory interests and paid those taxes. Further, although in January 1985 the Stanislaus County Board of Supervisors adopted a resolution to delete possessory interest assessments levied against Post-Newsweek for 1982 through 1985, Post-Newsweek has not received a corresponding refund. Thus, the limitation period has not run insofar as the possessory interest assessment for the 1982 base year.

ble franchise'" subject to property tax. (*Id.* at p. 378.) ▇ ▇▇▇▇ The *Cox* court found this conclusion to be supported not only by the general taxability language of the Constitution but also by case law. (*Ibid.*)[3]

Post-Newsweek contends the *Cox* case was incorrectly decided because the nonexclusive nature of the franchise did not satisfy the requirement that the agreement confer exclusive possession of tax exempt land. However, in *Freeman* v. *County of Fresno, supra,* 126 Cal.App.3d 459, this court concluded "[t]he requirement that the use must be exclusive means that it must not be one shared by the general public . . . ." (*Id.* at pp. 463-464.) Since the special rights of access to public rights-of-way authorized by the franchises are not shared with the general public, the exclusive possession requirement is satisfied. Thus, the fact the governmental entity may grant more than one CATV franchise in a single area does not preclude the imposition of a tax on the possessory interest conferred.

▇ Recognizing the constitutional and statutory mandate that all property must be taxed if not exempt under federal or state law and that the authority to use public rights-of-way is an assessable possessory interest in real property, this court must hold that Post-Newsweek's right to use and occupy the public rights-of-way constitutes a taxable property interest. Because this conclusion is contrary to the Board's legal conclusion that the entire franchise was a nontaxable intangible, the case will be remanded for reassessment.

III. *Although referred to by the County as a special franchise, the component of the franchise apart from the possessory interest, i.e., the right to engage in the cable television business by charging a fee and making a profit, is not an assessable property interest.*

▇ Franchises or licenses, such as the ones at issue here, consist of essentially two basic components: the right to use the public streets to lay the cables and the right to charge a fee to subscribers for their use of the cable facilities. Although a degree of inseparability exists between the two components of the franchise, the law recognizes the possessory interest is assessable and taxable. (*Cox Cable San Diego, Inc.* v. *County of San Diego,*

___

[3] The *Cox* holding has been codified by the Legislature, effective January 1, 1989. (Rev. & Tax. Code, § 107.7.) However, the codification does not apply to the 1982-1986 assessments in this case because the County's right to the taxes became fixed on the lien date of the fiscal year to which they relate. (*California Computer Products, Inc.* v. *County of Orange* (1980) 107 Cal.App.3d 731, 736 [166 Cal.Rptr. 68].) Nevertheless, insofar as the statute clarifies existing law on the taxability of a cable television grantee's possessory interest, it is not considered a change in the law, and no question of retroactive application is involved. "[I]n legal theory it simply states the law as it was all the time." (*City of Redlands* v. *Sorensen* (1985) 176 Cal.App.3d 202, 211 [221 Cal.Rptr. 728].)

*supra,* 185 Cal.App.3d 368, 386.) The remaining question is whether the second component is also assessable and taxable.

As noted above, all property is taxable unless specifically exempt by the federal or state Constitutions. (Cal. Const., art. XIII, § 1.) Further, all property so assessed shall be taxed in proportion to its full value. (*Ibid.*; Rev. & Tax. Code, § 201.) "Property" is defined as "all matters and things, real, personal, and mixed, capable of private ownership." (Rev. & Tax. Code, § 103.) Thus, County argues, the entire bundle of intangible rights owned by Post-Newsweek in its cable television franchises, including but not limited to its possessory interest in the real property, constitutes taxable property. In other words, the right to charge a user fee and to make a profit is inseparable for assessment purposes from the possessory interest in the public rights-of-way. As a result, the entire franchise value ($18,350,000) is subject to ad valorem property taxes.

Post-Newsweek responds that cable television franchises, apart from any possessory interest components, are intangible assets not subject to property tax. Article XIII, section 2 of the California Constitution only authorizes the Legislature to provide for property taxation of tangible personal property. Article XIII, section 27, was added to the Constitution to permit the Legislature to impose *income* taxation on corporations and their franchises, and such taxation has been implemented in the Bank and Corporation Tax Law. (Rev. & Tax. Code, § 23001 et seq.) Thus, it is only under the state income tax law and not the property tax law that franchises and similar intangible property have been taxed. The sole exception to this constitutional limitation pertains to the taxation of public utilities. Article XIII, section 19, provides for public utilities to be assessed by the State Board of Equalization. Revenue and Taxation Code section 23154 provides that special franchises of public utilities shall be assessed pursuant to article XIII, section 19. Because Post-Newsweek is not a public utility (*Television Transmission* v. *Public Util. Com.* (1956) 47 Cal.2d 82, 89 [301 P.2d 862]), it is not subject to assessment under article XIII, section 19. Post-Newsweek therefore concludes that intangible rights and assets of a cable television franchise are exempt from property taxes. (*Roehm* v. *County of Orange* (1948) 32 Cal.2d 280, 289 [196 P.2d 550]; 9 Witkin, Summary of Cal. Law (9th ed. 1989) Taxation, § 161, pp. 198-199; 1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1988) § 6.68, p. 6-108.)

Amicus curiae California Cable Television Association adds a further dimension to the Post-Newsweek argument. Amicus asserts that Post-Newsweek's right to operate its cable television business is a license protected by the free speech and communication privilege of the First Amendment. (*Weaver* v. *Jordan* (1966) 64 Cal.2d 235, 241-242 [49 Cal.Rptr. 537, 411 P.2d 289].) Unlike the possessory interest, the right to communicate does

not emanate from the government but from the Constitution, i.e., the people. Because of its constitutional origin, the right cannot be subjected to a differential tax burden by the state. (Cf. *Minneapolis Star* v. *Minnesota Comm'r of Rev.* (1983) 460 U.S. 575 [75 L.Ed.2d 295, 103 S.Ct. 1365]; *City of Alameda* v. *Premier Communications Network, Inc.* (1984) 156 Cal.App.3d 148, 153 [202 Cal.Rptr. 684].)

Post-Newsweek's position is sound insofar as it contends that its right to engage in the cable television business is not a part of the real property possessory interest for assessment purposes. Such a right constitutes an intangible asset which is exempt from tax under the California Constitution. (*Roehm* v. *County of Orange, supra,* 32 Cal.2d 280, 289; Rev. & Tax. Code, § 107.7, subd. (d).) Moreover, as asserted by amicus, the right to engage in the cable television business is also protected by the First Amendment free speech guaranty. Communication through television, including amusement and entertainment as well as the exposition of ideas, falls within the constitutional protection. (*Weaver* v. *Jordan, supra,* 64 Cal.2d 235; *Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 65 [68 L.Ed.2d 671, 678, 101 S.Ct. 2176]; *Group W Cable, Inc.* v. *City of Santa Cruz* (N.D.Cal. 1987) 669 F.Supp. 954, 959-961.) As such, it is exempt from property tax unless the state can show an "overriding governmental interest" beyond mere revenue raising to justify the tax. While acknowledging decisions upholding economic regulations generally applicable to all businesses, the United States Supreme Court has concluded "[d]ifferential taxation . . . places such a burden on the interests protected by the First Amendment that we cannot countenance such treatment unless the State asserts a counterbalancing interest of compelling importance that it cannot achieve without differential taxation." (*Minneapolis Star* v. *Minnesota Comm'r of Rev., supra,* 460 U.S. at p. 585 [75 L.Ed.2d at p. 305].)

The levying of ad valorem taxes on Post-Newsweek's right to do business as a cable operator would be unique to nonutility taxpayers in California. Post-Newsweek and presumably other cable television operators are taxed on their tangible personal and real property, including any possessory interests in real property. They pay local entity franchise fees up to 5 percent of their gross receipts for the privilege of operating their businesses. They also are subject to income tax on their corporate franchise earnings under the Bank and Corporation Tax Law (pursuant to Cal. Const., art. XIII, § 27). Thus, it would be discriminatory to tax their right to engage in the cable television business under the property tax laws.

Our conclusion that the intangible right to do business is not assessable for ad valorem tax purposes, however, does not mean the value of Post-Newsweek's intangible rights may not be considered in assessing the value of the possessory interests. As explained by Justice Traynor in

*Roehm* v. *County of Orange, supra,* 32 Cal.2d 280 at page 285, "Intangible values . . . that cannot be separately taxed as property *may be reflected in the valuation of taxable property.* Thus, in determining the value of [taxable] property, assessing authorities may take into consideration earnings derived therefrom, which may depend upon the possession of intangible rights and privileges that are not themselves regarded as a separate class of taxable property." (Italics added; accord *Michael Todd Co.* v. *County of Los Angeles* (1962) 57 Cal.2d 684, 693-694 [21 Cal.Rptr. 604, 371 P.2d 340]; *Western Title Guaranty Co.* v. *County of Stanislaus* (1974) 41 Cal.App.3d 733, 741 [116 Cal.Rptr. 351].)

In *Western Title Guaranty Co.,* it is stated: "[T]he propriety of including nontaxable intangible values in the valuation of otherwise taxable property has been asserted by the courts in a variety of contexts, and market value for assessment purposes is the value of property when *put to beneficial or productive use.*" (Italics added, *Western Title Guaranty Co.* v. *County of Stanislaus, supra,* 41 Cal.App.3d at p. 741.)

With respect to the assessor's authority to consider the "earnings" which depend upon the possession of intangible assets in valuing taxable property, the California Supreme Court has further explained: "[I]ncome derived in large part from *enterprise* activity [may not] be ascribed to the property being appraised; instead, it is the earnings from the [taxable] property itself or from the beneficial use thereof which are to be considered. . . . When no sound or practicable basis appears for apportionment of income as between enterprise activity and the property itself, then a method may be employed which imputes an appropriate income to the property." (Italics added, *California Portland Cement Co.* v. *State Bd. of Equalization* (1967) 67 Cal.2d 578, 584 [63 Cal.Rptr. 5, 432 P.2d 700]; accord *County of Riverside* v. *Palm-Ramon Development Co.* (1965) 63 Cal.2d 534, 538-539 [47 Cal.Rptr. 377, 407 P.2d 289]; *Madonna* v. *County of San Luis Obispo* (1974) 39 Cal.App.3d 57, 61 [113 Cal.Rptr. 916]; *ITT World Communications, Inc.* v. *County of Santa Clara* (1980) 101 Cal.App.3d 246, 257 [162 Cal.Rptr. 186].)

The provisions of newly enacted Revenue and Taxation Code section 107.7 (see fn. 3, *ante*) are consistent with the foregoing authorities. Section 107.7, subdivision (d) states that intangible assets or rights of a cable television system are not subject to ad valorem property taxation. However, that subdivision also provides that "a cable television possessory interest may be assessed and valued by assuming the presence of intangible assets or rights necessary to put the cable television possessory interest *to beneficial or productive use in an operating cable television system.*" The inclusion of this language indicates that the Legislature recognized the constitutional mandate that taxable property interests be assessed at full value. (*De Luz*

*Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 562-563 [290 P.2d 544].)

■■■ Without the right to put its possessory interest to beneficial or productive use by soliciting subscribers and charging them a fee for transmitting a signal, i.e., the right to engage in business, Post-Newsweek's possessory interest would have little or no market value. Nonetheless, as explained in *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d. at page 563, " 'the absence of an "actual market" for a particular type of property does not mean that it has no value or that it may escape from the constitutional mandate that "all property . . . shall be taxed in proportion to its value" (Art. XIII, § 1) but only that the assessor must then use such pertinent factors as replacement costs and income analyses for determining "valuation." ' [Citation.]"

In valuing Post-Newsweek's possessory interest on remand, the assessor shall consider the intangible right to do business as required by the above authorities. In so doing, the assessor may impute to the possessory interest an "appropriate" income from the right to engage in business. (*California Portland Cement Co.* v. *State Bd. of Equalization, supra,* 67 Cal.2d at p. 584.)

The judgment is reversed. The matter is remanded to the Board with directions to require the assessor to determine the value of Post-Newsweek's possessory interest according to the views expressed in this opinion. Appellant to recover its costs on appeal.

Ardaiz, J., and Sarkisian, J.,* concurred.

A petition for a rehearing was denied October 16, 1989.

---

* Assigned by the Chairperson of the Judicial Council.