CHANEY, J., concurring and dissenting.
*878 I join in all of the majority opinion except Part D(1) of the Discussion portion, from which I respectfully dissent.
*472 The Constitution directs that all real property be assessed as a percentage of "fair market value." ( Cal. Const., art. XIII, § 1.) For tax purposes, "property" includes a right-of-way granted to a cable service provider by a public entity ( Cox Cable San Diego, Inc. v. County of San Diego (1986) 185 Cal.App.3d 368, 378, 229 Cal.Rptr. 839 ) but not the right to provide the cable service itself ( Shubat v. Sutter County Assessment Appeals Bd. (1993) 13 Cal.App.4th 794, 801, 17 Cal.Rptr.2d 1 ; see Rev. & Tax. Code, § 107.7, subd. (d) ).
"Fair market value" means the value a willing buyer would pay to a willing seller in an open market. ( Rev. & Tax. Code, § 110, subd. (a) [" 'fair market value' means the amount of cash or its equivalent that property would bring if exposed for sale in the open market"]; Kaiser Co. v. Reid (1947) 30 Cal.2d 610, 623, 184 P.2d 879.) Property is therefore assessed based on the value that a hypothetical buyer would pay for it in the marketplace, "not the taxpayer's peculiar benefits ... unrelated to the market." ( Mola Dev. Corp. v. Orange County Assessment Appeals Bd . (2000) 80 Cal.App.4th 309, 325-326, 95 Cal.Rptr.2d 546.)
A right-of-way granted to a cable service provider by a public entity gives the provider "the right to place wires, conduits, and appurtenances along or across public streets, rights-of-way, or public easements." ( Rev. & Tax. Code, § 107.7, subd. (a).) For tax purposes, the fair market value of this right may be determined by a variety of methods, including but not limited to "the comparable sales method, the income method (including, but not limited to, capitalizing rent), or the cost method." (Ibid .) The preferred method is to capitalize the annual rent, which is an "income method." ( Rev. & Tax. Code, § 107.7, subd. (b)(1).)
Here, each franchise agreement at issue granted Time Warner Cable a single real property interest-the right to maintain wires and appurtenances on the granting entity's property for the purpose of providing cable services to subscribers.[1] The highest price any franchisor charged for the interest was *473 five percent of what Time Warner received for providing television *879 service only, not broadband or telephone service. Several franchisors charged less than this amount but none charged more, and nothing in the record suggests any franchisor desired to charge more.[2] The fair market value of each interest, the value a hypothetical buyer would pay for it in the marketplace, was therefore 5 percent of television revenues, at most. No buyer would pay more because if anyone attempted to sell one for more the buyer would simply apply to the franchisor for a new one, and receive it. (See 47 U.S.C. § 541(a)(1) ["a franchising authority may not grant an exclusive franchise"].)
The County of Los Angeles argues, and the majority agrees, that a franchise fee based only on television revenue does not capture the "full value" of a possessory interest which also generates broadband and telephony revenue. I do not disagree. But the Constitution permits assessment only of the "fair market value" of a property interest, which here has an upper limit of 5 percent of television revenue. The additional value resulting from broadband and telephony services is a peculiar benefit unrelated to the relevant market, and is not taxable.
I would affirm the trial court's judgment in its entirety.

For example, in 2003 the County of Los Angeles by way of Ordinance No. 2003-0078F granted Time Warner the right to "construct, reconstruct, maintain, and to operate a Cable Television System ... in the unincorporated Service Areas of [North Torrance] and to construct, reconstruct, maintain, operate, renew, repair, and remove in th[o]se service areas radio and television signal transmission lines and cables and all appurtenances and/or service connections ... which are necessary or convenient for the provision of [such] a System."
A "cable television system" within the meaning of the grant "means a system of antennas, cables, wires, lines, towers, waveguides, microwaves, microwave, laser beam, fiber optics, master antenna system, multiple distribution system, satellite, or any other conductors, converters, equipment or facilities designed and constructed for the purpose of producing, receiving, amplifying and distributing audio, video, voice, data signals, digital signals, fiber optic signals, and other forms of electronic or electrical signals, located in the unincorporated area of the county of Los Angeles, and constructed or used for one or more of the following purposes: [1] Collecting and amplifying local and distant broadcast television or radio signals and distributing and transmitting them; [2] Transmitting original cablecast programming not received through television broadcast signals; [3] Transmitting television pictures, film and videotape programs not received through broadcast television signals, whether or not encoded or processed to permit reception by only selected receivers; [4] Transmitting and receiving all other signals: digital, voice and audio-visual; [and 5] Any other applications used in transmitting audio and/or visual signals." (Los Angeles County Ord. No. 16.58.060, subd. (A).)

The franchisors may have felt constrained by federal law from charging more. (See 47 U.S.C. § 542(b) ["For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system to provide cable services"]; see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs . (2005) 545 U.S. 967, 974, 125 S.Ct. 2688, 2695, 162 L.Ed.2d 820, 833 ["cable service" within the meaning of mandatory common-carrier regulation does not include broadband]; Pub. Util. Code, §§ 5840, subd. (q)(1) [franchise fee payable as rent to use the public rights-of-way "shall be 5 percent of gross revenues"], 5860, subd. (e)(3) ["gross revenue" excludes revenue from broadband and telephony].)